**Motion for En Banc Reconsideration Granted; Majority and Dissenting Opinions filed September 4, 2014, Withdrawn; Affirmed and En Banc Majority and Dissenting Opinions filed April 23, 2015.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-13-00580-CV

---

## IN THE ESTATE OF ROSA ELVIA GUERRERO, DECEASED

---

**On Appeal from the Probate Court No. 2
Harris County, Texas
Trial Court Cause No. 388,367-401**

---

## E N   B A N C   M A J O R I T Y   O P I N I O N

Mike Hall Chevrolet, Inc. d/b/a Champion Chevrolet (Champion) brings this interlocutory appeal from the trial court's order denying its motion to compel arbitration pursuant to the Federal Arbitration Act (FAA). *See* Tex. Civ. Prac. & Rem. Code § 51.016 (providing that matters subject to the FAA may be appealed under the same circumstances that an appeal from a federal court order is permitted by 9 U.S.C. § 16). In a single broad issue, Champion asserts the trial court erred in

denying arbitration because there is a valid arbitration agreement and the claims asserted in the underlying suit are within its scope.

We grant Champion's motion for en banc reconsideration, withdraw the majority and dissenting opinions issued September 4, 2014, and issue en banc majority and dissenting opinions in their stead.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On August 13, 2007, Champion sold a used 2003 Chevrolet Trailblazer to Rosa Elvia Guerrero. Champion alleges that in connection with the purchase, Guerrero executed a Buyer's Order and Invoice, Retail Installment Contract, Security Agreement, and Arbitration Agreement. The Arbitration Agreement provides in relevant part:

> This Arbitration Agreement ("Agreement") applies to Customer(s) ("you") who is/are in the process of: (1) purchasing or leasing a vehicle(s) including any negotiations or application(s) for credit or other dealings or interactions with the Dealership (hereinafter including its employees, agents, successors, assigns, subsidiaries, parents and affiliates); (2) servicing any vehicle(s) with the Dealership; or (3) reviewing, negotiating or executing any documents or agreements during the course of interactions with the Dealership (collectively, "Customer(s)/Dealership Dealings"). You and the Dealership agree that arbitration will be the sole method of resolving any claim, dispute, or controversy (collectively, "Claims") that either Party has arising from Customer(s)/Dealership Dealings. Such Claims include, but are not limited to, the following: (1) Claims in contract, tort, regulatory, statutory, equitable, or otherwise; (2) Claims relating to any representations, promises, undertakings, warranties, covenants or service; (3) Claims regarding the interpretation, scope, or validity of this Agreement, or arbitrability of any issue; (4) Claims between you and Dealership; and (5) Claims arising out of or relating to your application for credit, this Agreement and/or any and all documents executed, presented or negotiated during Customer(s)/Dealership Dealings, or any resulting transaction, service, or relationship, including that with the Dealership, or any relationship with third parties who do not sign this Agreement that arises out of the

Customer(s)/Dealership Dealings.

The Retail Installment Sales Contract contains no arbitration clause, but it has a merger clause stating: "This contract contains the entire agreement between you and us relating to the sale and financing of the vehicle." Similarly, the Security Agreement does not contain an arbitration clause, but it also has a merger clause, which states:

> Entire Agreement. This Security Agreement embodies the entire agreement and understanding of Secured Party relating to the subject matter hereof and supersedes all prior representations, agreements and understandings, oral or written, relating to such subject matter.

> The Buyer's Order addresses arbitration:

> Any controversy or claim arising out of or relating to this purchase agreement or the breach thereof shall be settled by binding arbitration in accordance with the commercial arbitration rules of the American arbitration association [*sic*]. Any controversy or claim subject to this arbitration provision shall be decided by one arbitrator, and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. Any arbitration proceeding shall be conducted in the city and state where the vehicle purchased [*sic*] hereunder from the company.

It is alleged that Champion installed used tires on the vehicle as part of a "wheel swap." It is also alleged that Champion serviced the vehicle on several occasions after Guerrero's purchase. Guerrero and her minor son, Ruben Dominguez, died in an accident on March 23, 2009, which was allegedly caused by a failed tire on the vehicle. Guerrero's daughter, Ariana Dominguez, and two other passengers in Guerrero's vehicle, a friend and a niece, survived but were injured. Guerrero's vehicle crossed into oncoming traffic and collided with other vehicles, killing one of the drivers.

The underlying case began as the administration of Guerrero's estate. Another daughter, Alexandra Deike, was appointed to serve as Administratrix of

3

her mother's estate. Ariana Dominguez was appointed to serve as Administratrix the estate of her brother, Ruben. On January 31, 2011, Alexandra Deike, individually and on behalf of the estate of her mother, Ariana Dominguez, individually and on behalf of the estate of her brother, and Gregorio Dominguez, Ruben's father, (collectively the Guerrero parties) filed wrongful death, survival, personal injury, and product liability claims in the probate action against Michelin North America, Inc., the tire manufacturer, and a tire service company, who is no longer a party. Guerrero's parents (the parents) intervened, adding wrongful death claims against the tire companies. The surviving passengers in Guerrero's car (the passengers) also intervened to allege personal injury claims against the tire companies. The original defendants designated Champion as a responsible third party, and in April 2012, the Guerrero parties, the parents, and the passengers added Champion as a defendant, alleging wrongful death, survival and personal injury claims. The parents and passengers later added negligence claims against the Guerrero estate. In addition, Champion's affiliated companies (the AutoNation defendants) were later named as defendants. The estate and family members of the other driver (the Clarks) also intervened in the suit, alleging products liability, breach of warranty, negligence, and gross negligence against Michelin and Goodrich Corporation f/k/a the B.F. Goodrich Company, and negligence against Champion, the AutoNation defendants, and the Guerrero estate.

Champion filed its Motion to Compel Arbitration and for Stay or Dismissal of Litigation on May 16, 2012. It originally sought to compel arbitration with only the Guerrero parties; no other parties were included in Champion's motion. After a hearing on June 26, 2012, the trial court ordered the parties to engage in discovery on the arbitration issue.

On February 5, 2013, Champion filed a Plea to the Jurisdiction and

4

Amended Motion to Compel Arbitration. The amended motion expressly sought to compel arbitration of only the survival actions regarding Rosa Guerrero and Ruben Dominguez. In the jurisdictional plea, Champion sought dismissal of the personal injury and wrongful death claims, asserting the probate court lacked jurisdiction. The Guerrero parties responded in opposition. The trial court conducted a hearing on Champion's motion on February 28, 2013. The court denied the plea to the jurisdiction, but it advised the parties it would defer its ruling on the amended motion to compel arbitration until March 8, 2013, pending receipt of additional briefing. On March 6, 2013, Champion filed a Supplement to its Amended Motion to Compel Arbitration to add "all claims which are asserted by, or derivative of, Rosa Guerrero, Ruben Dominguez, Ariana Dominguez, as requested in the Original Motion" to compel arbitration. The Guerrero parties, the parents, and the passengers responded. After a hearing on June 25, 2013, the trial court signed an order denying the motion to compel arbitration without stating a basis for the ruling. Champion filed a timely notice of interlocutory appeal.[1]

## II. GOVERNING LAW AND STANDARD OF REVIEW

Arbitration cannot be ordered in the absence of an agreement to arbitrate. *See Freis v. Canales*, 877 S.W.2d 283, 284 (Tex. 1994). Thus, despite strong presumptions that favor arbitration, a valid agreement to arbitrate is a settled, threshold requirement to compel arbitration. *See In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737–38 (Tex. 2005) (orig. proceeding). The party moving to compel arbitration has the initial burden of proof to establish the arbitration agreement's existence and to show that the claims asserted against it fall within the

---

[1] The notice of appeal was filed by Mike Hall Chevrolet, Inc. d/b/a Champion Chevrolet. In its brief, Champion asserts that Mike Hall Chevrolet, Inc. changed its assumed name from Champion Chevrolet Highway 6 to AutoNation Chevrolet Highway 6 during the pendency of the underlying suit. We refer to appellant as Champion in this opinion.

arbitration agreement's scope. *Rachal v. Reitz*, 403 S.W.3d 840, 843 (Tex. 2013); *see also J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 233 (Tex. 2003).

Federal law provides that arbitration agreements are governed by contract law and are subject to contract defenses. *See In re Poly-Am., L.P.*, 262 S.W.3d 337, 347 (Tex. 2008) (citing 9 U.S.C. § 2). Under the FAA, an agreement to arbitrate is valid if it meets the requirements of the general contract law of the applicable state. *In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 606 (Tex. 2005) (orig. proceeding) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920 (1995)). The United States Supreme Court has emphasized that the FAA's purpose is to make arbitration agreements "as enforceable as other contracts, but not more so." *In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 192 (Tex. 2007) (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n. 12, 87 S.Ct. 1801 (1967)).

Under Texas law, the trial court conducts a summary proceeding to determine the applicability of an arbitration clause. *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 130 (Tex. 2005); Tex. Civ. Prac. & Rem. Code § 171.021(b) ("If a party opposing an application [for arbitration] denies the existence of the agreement, the court shall summarily determine that issue."). The trial court makes this summary determination based on the parties' affidavits, pleadings, discovery, and stipulations. *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 269 (Tex. 1992) (orig. proceeding). This procedure is similar to a motion for partial summary judgment and is subject to the same evidentiary standards. *See In re Jebbia*, 26 S.W.3d 753, 756–57 (Tex. App.—Houston [14th Dist.] 2000, orig. proceeding). Thus, the party alleging an arbitration agreement must present summary proof that an agreement to arbitrate requires arbitration of the dispute. *Tipps*, 842 S.W.2d at 269. Thus, the party alleging an arbitration agreement must present summary proof

6

that an agreement to arbitrate requires arbitration of the dispute. *Tipps*, 842 S.W.2d at 269; *Jebbia*, 26 S.W.3d at 757. The party resisting may then contest the opponent's proof or present evidence supporting the elements of a defense to enforcement. *Jebbia*, 26 S.W.3d at 757. The party resisting may then contest the opponent's proof or present evidence supporting the elements of a defense to enforcement. *Jebbia*, 26 S.W.3d at 757. If there is a genuine question of material fact concerning the existence of the agreement, the trial court may not summarily grant or deny the motion to compel arbitration but must conduct an evidentiary hearing to resolve the disputed material facts. *Id.* at 759 (trial court abused its discretion by granting a motion to compel arbitration when there were issues of material fact on whether the agreement was enforceable).

Whether an arbitration agreement is enforceable is a question of law which is reviewed do novo. *J.M. Davidson, Inc.*, 128 S.W.3d at 227. In addition, whether an arbitration agreement binds a nonsignatory is a gateway matter to be determined by the court, rather than the arbitrator *See In re Weekley Homes*, 180 S.W.3d at 130; *see also In re Labatt Food Service, L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding) (stating that when the "arbitration agreement is silent about who is to determine whether particular persons are bound by the agreement, courts, rather than the arbitrator, should determine the issue").

When reviewing the denial of a motion to compel arbitration, if the court's factual findings are in dispute, we review the court's ruling under a legal sufficiency or "no evidence" standard of review. *Id.* In conducting a legal sufficiency review, we credit favorable evidence if a reasonable fact finder could do so and disregard contrary evidence unless a reasonable fact finder could not do so. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We defer to the trial court's factual determinations that are supported by evidence, but we review the

trial court's legal determinations de novo. *In re Labatt Food Serv.*, 279 S.W.3d at 643.

The record must be construed in a light favorable to supporting the trial court's ruling. *See J.M. Davidson, Inc.*, 128 S.W.3d at 233. When a party does not request findings of fact or conclusions of law and the trial court files none, it is implied that the trial court made all necessary findings of fact to support its ruling. *See Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex. 1992). The trial court did not state a basis for its ruling in the order denying the motion to compel arbitration. Accordingly, we must uphold the trial court's ruling on any legal theory supported by the evidence. *See Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990); *Inland Sea, Inc. v. Castro*, 420 S.W.3d 55, 57–59 (Tex. App.—El Paso 2012, pet. denied) (affirming denial of motion to compel arbitration on alternative ground where order did not specify the basis for the ruling); *Grand Homes 96, L.P. v. Loudermilk*, 208 S.W.3d 696, 702 (Tex. App.—Fort Worth 2006, pet. denied) (stating appellate court is required to uphold the trial court's ruling on a motion to compel arbitration if it is proper on any grounds).

## III. DISCUSSION

### A. Champion's Issues

Although Champion raises a single broad issue asserting the trial court erred in denying arbitration, it includes several sub-issues. Champion first argues the trial court erred by denying its motion to compel arbitration because Guerrero and Champion agreed to submit disputes such as the underlying action to arbitration. Champion argues courts must resolve any doubts about an agreement to arbitrate in favor of arbitration, citing *Cantella & Co. v. Goodwin*, 924 S.W.2d 943, 944 (Tex. 1996) (orig. proceeding) (granting mandamus relief where trial court had denied a motion to compel arbitration after the relator had proved up the arbitration

agreement and that the subject matter involved commerce, thereby bringing the agreement within the FAA's scope). The presumptions favoring arbitration do not apply to a court's determination as to whether an arbitration agreement exists, however. *See In re Kellogg, Brown & Root, Inc*., 166 S.W.3d at 737–38.

Generally, an arbitration agreement is enforced only between signatories to the agreement. *Van Zanten v. Energy Transfer Ptnrs., L.P.*, 320 S.W.3d 845, 847 (Tex. App.—Houston [1st Dist.] 2010, no pet.). Champion alleges, however, that the claims of the Guerrero parties, the passengers, and the parents are within the scope of the Arbitration Agreement because the wrongful death and survival claims are derivative of Guerrero's rights. *See In re Jindal Saw Ltd.,* 289 S.W.3d 827, 828 (Tex. 2009) (holding a decedent's pre-death arbitration agreement binds her wrongful death beneficiaries); *Labatt,* 279 S.W.3d at 646 (stating that a wrongful death cause of action is entirely derivative and regardless of the fact that the beneficiaries are seeking compensation for their own personal loss, they still stand in the decedent's legal shoes and are bound by her agreement); *Russell v. Ingersoll-Rand Co.,* 841 S.W.2d 343, 345 (Tex. 1992) (stating survival claims are wholly derivative of a decedent's rights).

Champion also argues the individual claims of the Guerrero parties, the parents, and the passengers are within the scope of the agreement because they seek to derive a benefit from the sales contract by alleging claims related to the sale and service of the vehicle. *See In re Kellogg Brown & Root, Inc.*, 166 S.W.3d at 739 (holding a non-signatory plaintiff may be compelled to arbitrate under direct benefits estoppel if he seeks to enforce the terms of a contract containing an arbitration provision because he is estopped from simultaneously attempting to avoid the contract's burdens, including the obligation to arbitrate disputes). Champion acknowledges that the Clarks are not signatories to the agreement, but it

9

contends their claims are factually intertwined with the arbitrable claims. *See Ascendant Anesthesia PLLC v. Abazi*, 348 S.W.3d 454, 462 (Tex. App.—Dallas 2011, no pet.) (recognizing that claims may become arbitrable when factually intertwined with arbitrable claims); *see also In re Prudential Sec. Inc.*, 159 S.W.3d 279, 283 (Tex. App.—Houston [14th Dist.] 2005, orig. proceeding) ("To be within the scope of an arbitration provision, the allegations need only be factually intertwined with arbitrable claims or otherwise touch upon the subject matter of the agreement containing the arbitration provision.").[2] Alternatively, if these claims are not subject to arbitration, Champion asserts the arbitrable claims must be compelled to arbitration even if it results in piecemeal litigation. *See Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 217, 105 S.Ct. 1238, 1241 (1985) (stating the FAA requires arbitrable claims to be arbitrated even if it may result in "the possibly inefficient maintenance of separate proceedings in different forums").

Finally, Champion asserts it has not waived its right to arbitrate this dispute. *See Perry Homes v. Cull*, 258 S.W.3d 580, 589–90 (Tex. 2008) (holding a party waives an arbitration clause by substantially invoking the judicial process to the other party's detriment or prejudice).

**B. The Responses in Opposition to Arbitration**

The Guerrero parties allege: (1) the court's general order must be affirmed because Champion failed to negate every legal theory supported by the record; (2) Champion failed to offer admissible evidence to prove a valid arbitration agreement exists and that the underlying dispute is within its scope, and the trial court properly refused to give weight to the unauthenticated documents containing hearsay attached to Champion's amended motion to compel arbitration; (3)

---

[2] We express no opinion on Champion's argument that factually intertwined claims must be compelled to arbitration in this case.

10

nonsignatories are not bound because the arbitration documents do not mention heirs or others with claims based on wrongful death; and (4) the merger clauses in the contracts that do not contain arbitration agreements require that the court give no effect to the arbitration agreement and the arbitration language in the Buyer's Order.

The passengers filed a response to Champion's amended motion to compel arbitration in which they assert that their claims do not fall within the scope of the arbitration clauses. They also argue that Champion waived its right to arbitration by seeking to dismiss plaintiffs' claims and substantially invoking the judicial process.

**C. Did Champion establish the existence of a valid arbitration agreement?**

On appeal, Champion alleges that Guerrero executed several documents as part of a single transaction when she purchased the vehicle: (1) Buyer's Order and Invoice; (2) Motor Vehicle Retail Installment Sales Contract; (3) Security Agreement; and (4) Arbitration Agreement. The general rule is that separate documents executed at the same time, for the same purpose, and in the course of the same transaction are to be considered as one instrument, and are to be read and construed together. *CA Partners v. Spears*, 274 S.W.3d 51, 66 n.9 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (citing *Jones v. Kelley*, 614 S.W.2d 95, 98 (Tex. 1981)). In addition, a court may determine, as a matter of law, that multiple documents comprise a written contract, and in appropriate instances, may construe all the documents as if they were part of a single, unified instrument. *The Courage Co., L.L.C. v. The Chemshare Corp.,* 93 S.W.3d 323, 333 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (citing *Fort Worth I.S.D. v. City of Fort Worth*, 22 S.W.3d 831, 840 (Tex. 2000)).

### 1. Burden of Proof

When an entity seeks to compel arbitration, it must first establish its right to that contract remedy. *See Mohamed v. Auto Nation USA Corp.*, 89 S.W.3d 830, 836 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (granting mandamus relief where movants did not meet their initial evidentiary burden to establish an arbitration agreement they could enforce). It is well settled that the first step to prove arbitration is required is to establish the parties executed a valid agreement to arbitrate. *See In re Kellogg Brown & Root, Inc.*, 166 S.W.3d at 737–38.

The party moving to compel arbitration has the initial burden of proof to establish the arbitration agreement's existence and to show that the claims asserted against it fell within the arbitration agreement's scope. *See J.M. Davidson, Inc.*, 128 S.W.3d at 233. In other words, the party alleging the existence of an arbitration agreement must present summary proof that an agreement to arbitrate exists and requires arbitration of the dispute. *In re Jim Walter Homes, Inc.*, 207 S.W.3d 888, 897 (Tex. App.—Houston [14th Dist.] 2006, orig. proceeding); *In re Jebbia*, 26 S.W.3d 753, 757 (Tex. App.—Houston [14th Dist.] 2000, orig. proceeding) (citing *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 269 (Tex. 1992) (orig. proceeding)).

Although public policy favors arbitration, arbitration is also a creature of contract. *In re Bunzl USA, Inc.*, 155 S.W.3d 202, 209 (Tex. App.—El Paso 2004, orig. proceeding). In deciding whether the parties have agreed to arbitrate, we do not resolve doubts or indulge a presumption in favor of arbitration. *Id.* (citing *In re Jebbia*, 26 S.W.3d at 757). Thus, a party seeking to compel arbitration must first establish that an agreement exists and that the claims raised are within the agreement's scope before doubts are resolved in favor of arbitration. *See Cantella*, 924 S.W.2d at 944.

In sum, a prerequisite to compelling arbitration is to prove the existence and execution of the arbitration agreement. *See, e.g.*, *Citigroup Global Markets, Inc. v. Brown*, 261 S.W.3d 394, 400 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (stating the moving parties attached to their motion to compel an affidavit proving up the agreement and stating that the non-movant entered into the agreement); *In re Kellogg Brown & Root*, 80 S.W.3d 611, 616 (Tex. App.—Houston [1st Dist.] 2002, orig. proceeding) (noting the movant's affidavit stated the documents were signed by the non-movant during his employment with Kellogg).

**2. Evidence**

The evidentiary standards for a motion to compel arbitration are the same as for a motion for summary judgment. *In re Jebbia*, 26 S.W.3d at 756–57. Under the summary judgment standard, copies of documents must be authenticated in order to constitute competent summary judgment evidence. *See Republic Nat'l Leasing Corp. v. Schindler*, 717 S.W.2d 606, 607 (Tex. 1986) (per curiam); *see also Niu v. Revcor Molded Prod. Co.,* 206 S.W.3d 723, 729 (Tex. App.—Fort Worth 2006, no pet.). A properly sworn affidavit stating that the attached documents are true and correct copies of the original authenticates the copies so they may be considered as summary judgment evidence. *Republic*, 717 S.W.2d at 607; *see also Jack B. Anglin Co.*, 842 S.W.2d at 270 (relying on summary judgment precedent to hold that the trial and appellate courts must accept as true the clear, direct, and positive evidence of an undisputed affidavit supporting a motion to compel arbitration).

Champion attached to its original motion to compel arbitration a copy of the Arbitration Agreement that it alleges is part of the sales documents signed when Guerrero purchased the vehicle. The copy was referred to in the motion as a "true and correct" copy, but no affidavit or other type of verification was included with the motion. In their response, the Guerrero parties objected to the attachment as

13

inadmissible. Champion later filed an amended motion to compel arbitration, attaching all four sales documents, but it did not include an affidavit or other authentication. The Guerrero parties again objected to the lack of authentication and that no proof of execution was provided. "Simply attaching a document to a pleading does not make the document admissible as evidence, dispense with proper foundational evidentiary requirements, or relieve a litigant of complying with other admissibility requirements." *Gruber v. CACV of Colorado, LLC*, No. 05-07-00379-CV, 2008 WL 867459, at *2 (Tex. App.—Dallas Apr. 2, 2008, no pet.) (mem. op) (setting aside arbitration award where unauthenticated copy of award amounted to no evidence, citing *Ceramic Tile Intern., Inc. v. Balusek*, 137 S.W.3d 722, 725 (Tex. App.—San Antonio 2004, no pet.)).

Champion asserts that the Arbitration Agreement was properly received into evidence because the Guerrero parties failed to challenge it by a sworn pleading or affidavit, citing Rule of Civil Procedure 93(7), which provides that a written contract is received into evidence unless a party files a verified pleading denying the execution of the document. Tex. R. Civ. P. 93(7). To support its position, Champion cites *Gutierrez v. Rodriguez*, 30 S.W.3d 558 (Tex. App.—Texarkana 2000, no pet.) and *Boyd v. Diversified Financial Systems*, 1 S.W.3d 888 (Tex. App.—Dallas 1999, no pet.). These authorities are not controlling, however. In *Gutierrez*, the documents at issue were admitted without objection. *Gutierrez*, 30 S.W.3d at 562. Rule 93(7) concerns execution of a contract, but it does not address its authentication. In *Boyd*, while the signatures were not required to be proved in the absence of a verified denial, the contracts where authenticated before they were admitted as evidence. *Boyd*, 1 S.W.3d at 891. The proponent of the note and guaranty testified through its representative that it possessed the originals of the exhibits and the proffered exhibits were true and exact copies of the originals. *Id.*

14

The trial court may summarily decide whether to compel arbitration on the basis of affidavits, pleadings, discovery, and stipulations if the material facts are not controverted. *See Texas La Fiesta Auto Sales, LLC v. Belk*, 349 S.W.3d 872, 882 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (citing *Jack B. Anglin Co.*, 842 S.W.2d at 269). When, as here, the facts are disputed, the trial court should conduct an evidentiary hearing. *Jebbia*, 26 S.W.3d at 759. Although records from three hearings related to Champion's motions to compel arbitration are included in our record, none of the hearings was evidentiary. Thus, Champion did not authenticate the sales documents by testimony at an evidentiary hearing. Our record does not reflect that Champion requested an evidentiary hearing and it has not complained on appeal that the trial court failed to hold one. *See Smart Call, LLC v. Genio Mobile, Inc.*, No. 14-13-00223-CV, 2014 WL 3955083, at *7 (Tex. App.—Houston [14th Dist.] Aug. 14, 2014, pet. denied) (affirming the trial court's denial of a motion to compel arbitration where the movant did not conclusively establish the existence of an agreement, did not request an evidentiary hearing, and did not complain on appeal that the trial court failed to hold one).

Because Champion has not authenticated the Arbitration Agreement or any of the sales documents it attached to its motions to compel arbitration, there is no competent evidence of an agreement to arbitrate. *See In re Universal Fin. Consulting Group, Inc.*, No. 14-08-00226-CV, 2008 WL 2133186, at *2 (Tex. App.—Houston [14th Dist.] 2008, May 20, 2008, orig. proceeding) (mem. op.) (holding that because the trial court could not have properly considered the unauthenticated agreements attached to motion to compel arbitration and amended motion, it did not abuse its discretion by denying the motion to compel arbitration); *see also Mayo v. Suemaur Exploration & Prod. LLC*, No. 14-07-00491-CV, 2008 WL 4355259, at *5 (Tex. App.—Houston [14th Dist.] Aug. 26, 2008, pet. denied) (mem. op.) (unauthenticated or unsworn documents or documents not supported by

15

an affidavit are not entitled to consideration as summary judgment evidence).

Accordingly, we conclude the trial court did not abuse its discretion in denying the motion to compel arbitration.

**3. Was there a judicial admission?**

In their response in opposition to arbitration, the Guerrero parties stated, "In connection with the purchase, Rosa Guerrero apparently signed various documents." In addition, counsel stated, "The ones that were signed in August were signed at roughly the same time, evidently. We still, of course, don't have evidence to show that. But, evidently, in looking at their dates, they seem to be signed at the same time." Based on these statements, Champion asserts the Guererro parties' counsel judicially admitted the existence of an arbitration agreement signed by Guerrero.

A judicial admission results when a party makes a statement of fact which conclusively disproves a right of recovery or a defense. *See Brown v. Lanier Worldwide, Inc.*, 124 S.W.3d 883, 900 (Tex. App.—Houston [14th Dist.] 2004, no pet.); *Richards v. Comm'n for Lawyer Discipline*, 35 S.W.3d 243, 247 (Tex. App.—Houston [14th Dist.] 2000, no pet.). A judicial admission is a formal waiver of proof that dispenses with the production of evidence on an issue and bars the admitting party from disputing it. *Dowelanco v. Benitez*, 4 S.W.3d 866, 871 (Tex. App.—Corpus Christi 1999, no pet.). As long as the statement stands unretracted, it must be taken as true by the court and jury; it is binding on the declarant and he cannot introduce evidence to contradict it. *Smith v. Altman*, 26 S.W.3d 705, 709 (Tex. App.—Waco 2000, pet. dism'd w.o.j.). This rule is based on the public policy that it would be unjust to permit a party to recover after he has sworn himself out of court by a clear, unequivocal statement. *Dowelanco*, 4 S.W.3d at 871. Counsel's statements on behalf of a client may serve as judicial admissions. *In*

16

*re M.M.O.*, 981 S.W.2d 72, 84 (Tex. App.—San Antonio 1998, no pet.). The elements required for a judicial admission are: (1) a statement made during the course of a judicial proceeding; (2) that is contrary to an essential fact or defense asserted by the person making the admission; (3) that is deliberate, clear, and unequivocal; (4) that, if given conclusive effect, would be consistent with public policy; and (5) that is not destructive of the opposing party's theory of recovery. *Id.; Lee v. Lee,* 43 S.W.3d 636, 641–42 (Tex. App.—Fort Worth 2001, no pet.).

We conclude counsel's statements in this case are not "deliberate, clear, and unequivocal." These statements do not rise to the level required to constitute judicial admissions. *See Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 905 (Tex. 2000) (finding no judicial admission by counsel's statement, "First of all, Your Honor, I think it's very important—do you have the agreement the plaintiff—the agreement that my client entered into?").

We hold that the Guerrero parties did not judicially admit that Guerrero executed an agreement requiring arbitration of this dispute.

**4. Was a Ruling Required on the Objection to Champion's Proof?**

Next, Champion asserts the Guerrero parties have waived any objection to the admissibility of the Arbitration Agreement and other contract documents attached to its motion to compel arbitration. Although the Guerrero parties objected in the trial court to the admissibility of the contract documents based on the lack of authentication, the record contains no ruling on their objection.[3]

As we have previously recognized, we apply the same evidentiary standards for a motion to compel arbitration as for a motion for summary judgment. *See TMI,*

---

[3] Although the Guerrero parties also included a hearsay objection to the attachments, we treat their objection as one to the lack of authentication because the substance of the objection was that an unauthenticated document is hearsay. *See, e.g.,* Tex. R. Evid. 803(6); 902(10) (providing documents authenticated by a business records affidavit are exceptions to hearsay).

*Inc.*, 225 S.W.3d at 794. Summary-judgment evidence must be presented in a form that would be admissible at trial. *Hou–Tex, Inc. v. Landmark Graphics*, 26 S.W.3d 103, 112 (Tex. App.—Houston [14th Dist.] 2000, no pet.). Defects in the form of authentication of attachments in support of a motion for summary judgment are waived without a proper objection in the trial court. *See Mansions in the Forest, L.P. v. Montgomery Cnty.,* 365 S.W.3d 314, 317 (Tex. 2012) (holding that an objection is required to preserve a complaint that a purported affidavit lacks a jurat or other indication that it was sworn to because it is an objection to form); *see also Ellen v. Brazos County Bail Bond Bd.*, 127 S.W.3d 42, 46 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (holding complaint that summary-judgment proof was unauthenticated hearsay was waived where no objection was made at trial that the affidavit lacked proper authentication and specificity); *Wakefield v. Wells Fargo Bank, N.A.*, No. 14-12-00686-CV, 2013 WL 6047031, at *2–*3 (Tex. App.—Houston [14th Dist.] Nov. 14, 2013, no pet.) (mem. op.) (holding objections that affidavits had errors and one affidavit was not based on personal knowledge were defects of form that were required to be ruled on by the trial court to preserve error).

However, "[a] complete absence of authentication is a defect of substance that is not waived by a party failing to object and may be urged for the first time on appeal." *Blanche v. First Nationwide Mfg. Corp.*, 74 S.W.3d 444, 451 (Tex. App.-Dallas 2002, no pet.); *Mayo*, No. 14-07-00491-CV, 2008 WL 4355259, at *5 (holding no objection is required to preserve error challenging unauthenticated or unsworn documents, or documents not supported by an affidavit). Objections to defects in the substance of summary-judgment proof are not required to be first presented to, and ruled on by, the trial court. *See Green v. Indus. Specialty Contractors, Inc.*, 1 S.W.3d 126, 130 (Tex. App.—Houston [1st Dist.] 1999, no pet.) (holding objection that summary-judgment affidavit was conclusory was not

waived even though the objecting party failed to obtain a ruling from the trial court); *Ramirez v. Transcon. Ins. Co.*, 881 S.W.2d 818, 829 (Tex. App.—Houston [14th Dist.] 1994, writ denied) (same); *see also Perkins v. Crittenden*, 462 S.W.2d 565, 568 (Tex. 1970) (reversing summary judgment because an unverified copy of a promissory note was offered as summary-judgment evidence, even though the complaint was raised for the first time on appeal).

The Texas Supreme Court has recognized that it has "explicitly allowed parties to deviate" from the preservation requirements in limited circumstances. *See Mansions*, 365 S.W.3d at 317. In *Mansions*, the court cited *Perkins*, which addressed a complaint raised for the first time on appeal and distinguished the absence of an affidavit from a defective affidavit that is subject to correction. *Id.* (citing *Perkins,* 462 S.W.2d at 568). The absence of an affidavit verifying a copy of the instrument attached as summary judgment proof amounts to no proof. *See id.* In this case, because Champion provided no affidavit, *Perkins* does not require a ruling on the objection. *See id.*

An examination of the cases that Champion cites in support of its contention that a ruling on the objection was required to preserve error reveals that the defects at issue were actually defects in form, not substance.[4] *See Hicks v. Humble Oil & Ref. Co.*, 970 S.W.2d 90, 93 (Tex. App.—Houston [14th Dist.] 1998, pet. denied) (stating objection to *improper authentication* was waived by failure to secure ruling) (emphasis added); *Adi v. Prudential Prop. & Cas. Ins. Co.*, No. 14-01-01001-CV, 2003 WL 22908129, at *2 (Tex. App.—Houston [14th Dist.] Dec. 11, 2003, pet. denied) (mem. op.) (stating a pleading attached as an exhibit was not required to be authenticated and an objection to hearsay contained in affidavit was

---

[4] We note that the preservation rules in summary judgment practice have sometimes caused confusion. *See Mayo*, No. 14-07-00491-CV, 2008 WL 4355259, at *6, n.1 (Brown, J., concurring).

19

one of form that was waived by the failure to obtain a written ruling) (citing *Rogers v. Continental Airlines, Inc.*, 41 S.W.3d 196, 200 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (stating objection that *exhibits were not properly authenticated* was waived because the record contained no ruling) (emphasis added)). Therefore, these cases may be distinguished from the substantive defect in the present case where no affidavit or other authentication was provided.

The court has granted en banc reconsideration to address an apparent conflict with *Courtland Building Co. v. Jalal Family P'ship*, 403 S.W.3d 265, 270-71, n.4 (Tex. App.—Houston [14th Dist.] 2012, no pet.). In *Courtland,* which also addressed the denial of a motion to compel arbitration, this court stated in a footnote:

> The Property Owners [the Jalals and the Family Partnership] did not object to Courtland's failure to authenticate the exhibits offered in support of motion to compel arbitration, thereby waiving such objections to form. *See Commint Tech. Servs., Inc. v. Quickel*, 314 S.W.3d 646, 651 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

This statement does not address the issue before this Court in the present case because, in *Courtland*, there was no dispute that there was a valid arbitration agreement and authentication of the arbitration agreement was not at issue.

The Texas Supreme Court has held that the complete absence of authenticating evidence is a defect in substance that can be raised for the first time on appeal. *See Mansions in the Forest, L.P.*, 365 S.W.3d at 317. This court's precedent holds the same.[5] *Mayo*, No. 14-07-00491-CV, 2008 WL 4355259, at *5;

---

[5] Every court of appeals that has considered this issue has held that the complete absence of authenticating evidence is a defect in substance. *See Smith v. DeLooze*, No. 13-14-00092-CV, 2015 WL 124447, at *5 (Tex. App.—Corpus Christi Jan. 8, 2015, no pet.) (mem. op.); *Hernandez v. Gallardo*, —— S.W.3d ——, No. 08-12-00178-CV, 2014 WL 5248643, at *2 (Tex. App.—El Paso Oct. 15, 2014, pet. filed); *Petroleum Analyzer Co. LP v. Olstowski*, No. 01-09-00076-CV, 2010 WL 2789016, at *19 (Tex. App.—Houston [1st Dist.] July 15, 2010, no pet.) (mem. op.); *Huffaker v. Wylie LP Gas, Inc.*, No. 07-08-0133-CV, 2009 WL 1506901, at *2

*see also Garza v. Wilson*, No. 14-98-00928-CV, 2000 WL 64052, at *2 (Tex. App.—Houston [14th Dist.] Jan. 27, 2000, no pet.). The dissent predicts that the Texas Supreme Court might change the law in some future case, so therefore this court should go ahead and do so. That is not our function and we decline to trade precedent for prediction. Instead, we follow the Texas Supreme Court, and our prior precedent, and hold that the complete absence of authenticating evidence is a defect in substance that may be raised for the first time on appeal.

We hold the Guerrero parties did not waive their objection to the authentication and admissibility of the documents Champion offered to show the existence of an agreement to arbitrate.

## IV. CONCLUSION

We conclude the trial court did not abuse its discretion in denying Champion's motion to compel arbitration because Champion failed to meet its burden to establish the existence of an arbitration agreement. *See In re Bunzl USA, Inc.*, 155 S.W.3d at 207 (finding no abuse of discretion in denial of arbitration where the trial court could have reasonably concluded the existence of an agreement to arbitrate was not established); *Grace Interest, LLC v. Wallis State Bank*, 431 S.W.3d 110, 122–23 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (holding trial court did not err in refusing to compel arbitration where appellants did not establish the existence of a valid arbitration agreement covering

---

(Tex. App.—Amarillo May 29, 2009, pet. denied) (mem. op.); *Gudur v. Tex. Dep't of Health*, No. 03-03-00752-CV, 2005 WL 2673670, at *5 (Tex. App.—Austin Oct. 21, 2005, no pet.) (mem. op.); *Blanche*, 74 S.W.3d at 451; *Llopa, Inc. v. Nagel*, 956 S.W.2d 82, 87 (Tex. App.—San Antonio 1997, pet. denied); *Peerenboom v. HSP Foods, Inc.*, 910 S.W.2d 156, 160 (Tex. App.—Waco 1995, no writ). In her dissent, Chief Justice Frost cites *Gomez v. Allstate Tex. Lloyds Ins. Co.*, 241 S.W.3d 196, 202 (Tex. App.—Fort Worth 2007, no pet.), stating that it holds that a complete failure of authenticating evidence is a defect in form. It does not. The issue in *Gomez* was the lack of certification on a potentially self-authenticating public record, which is a defect in the form of authentication. *See* 241 S.W.3d at 202.

21

the claims at issue because they failed to attach any arbitration agreements to their arbitration request). Because Champion did not establish the existence of an arbitration agreement, we need not address the other issues raised in the briefing. *See Inland Sea, Inc.*, 420 S.W.3d at 57–59 (affirming an order denying arbitration on an alternate ground supported by the record).

We affirm the trial court's order denying Champion's motion to compel arbitration.


/s/    Ken Wise
        Justice


Justices Boyce, Jamison, Donovan, and Brown join the En Banc Majority Opinion authored by Justice Wise. Chief Justice Frost authored an En Banc Dissenting Opinion. Justice Christopher authored an En Banc Dissenting Opinion, in which Justices McCally and Busby join.

22