

# Fourth Court of Appeals
## San Antonio, Texas

### DISSENTING OPINION

No. 04-16-00644-CV

**UTILITY TRAILER SALES SOUTHEAST TEXAS, INC.,**
Appellant

v.

Hector L. **LOZANO** and Mary E. Short,
Appellees

From the 341st Judicial District Court, Webb County, Texas
Trial Court No. 2015CVT003881 D3
Honorable Rebecca Ramirez Palomo, Judge Presiding

Opinion by:  Marialyn Barnard, Justice
Dissenting Opinion by: Irene Rios, Justice

Sitting:  Sandee Bryan Marion, Chief Justice
Marialyn Barnard, Justice
Irene Rios, Justice

Delivered and Filed: July 19, 2017

I respectfully dissent from the majority opinion holding the trial court improperly denied

Utility Tractor Sales Southeast Texas, Inc.'s ("UTS") motion to compel arbitration.

Lozano signed the 2010 Arbitration Agreement when his first term of employment began

with UTS in May 2010. That term of employment ended in October 2012. In May 2013, Lozano

began a second term of employment with UTS. UTS's representative testified all new employees

are required to sign an arbitration agreement and that UTS considered Lozano to be a "new

employee" when he began his second term of employment. However, for unexplained reasons,

the record does not show that Lozano signed an arbitration agreement when he was rehired by

UTS in 2013.  Lozano was injured on the job in 2014 and subsequently brought suit against UTS. UTS then sought to compel arbitration.

To compel arbitration, UTS was required to provide evidence of a valid arbitration agreement and establish that Lozano's claim fell within the scope of that agreement.  *See In Estate of Guerrero*, 465 S.W.3d 693, 703 (Tex. App.—Houston [14th Dist.] 2015, pet. denied).  In determining whether a claim falls within the scope of an arbitration clause, we should apply a common-sense examination and enforce the language of the contract according to its plain meaning unless such a reading would defeat the true intent of the parties as reflected by the writing itself.  *In re Lisa Laser USA, Inc.*, 310 S.W.3d 880, 884 (Tex. 2010) (per curiam).  Although "we generally favor arbitration agreements, we should not reflexively endorse an agreement so lacking in precision that [we] must first edit the document for comprehension, and then rewrite it to ensure its enforceability."  *J.M. Davidson, Inc. v. Weber*, 128 S.W.3d 223, 231 (Tex. 2003).

The majority holds the 2010 Arbitration Agreement is applicable to the claims arising out of Lozano's second term of employment, reasoning the 2010 Arbitration Agreement survived the employer-employee relationship and applies to any "Covered Claim" asserted after termination of Lozano's first term of employment.  I disagree.

In the interpretation proposed by the majority, the term "Covered Claim" includes not only claims arising from injuries which might have occurred during the first term of employment as contemplated by the parties when Lozano entered into the 2010 Arbitration Agreement, but also any claim that might ever arise in connection with any term of employment Lozano has with UTS, regardless of what connection there may or may not be to the term of employment the parties contemplated at the time of the 2010 Arbitration Agreement.  This interpretation defeats the parties' intent as reflected by the writing itself.

The 2010 Arbitration Agreement identifies a "Covered Claim" as a claim arising from "[a]ny injury suffered by Claimant while in the Course and Scope of Claimant's employment with [UTS]." The agreement also provides that the "[a]greement shall survive the employer-employee relationship between the Company and the Claimant and shall apply to any Covered Claim whether it arises or is asserted during or after termination of the Claimant's employment with the Company or the expiration of any benefit plan." The arbitration agreement, however, does not expressly state a "Covered Claim" may be a claim that arises after Lozano's employment ended and in the event he was rehired.

Unlike the arbitration agreement examined by the district court in *Masse v. Waffle House*, a case which is relied upon by the majority, the 2010 Arbitration Agreement does not expressly encompass claims arising during future periods of employment. *See Masse v. Waffle House*, No. CIV-13-1301-HE, 2014 WL 1901112 at *1-3 (W.D. Okla. May 13, 2014). In *Masse*, the arbitration agreement specifically stated the parties "will resolve by arbitration all claims and controversies [ ], past, present, or future, whether or not arising out of [plaintiff's] employment or termination from employment …" *See id*. at *3.

Additionally, the 2010 Arbitration Agreement does not contain express language referencing future claims, agreements, or relationships. In *Anderson v. Waffle House, Inc.*, another case relied upon by the majority, the arbitration agreement explicitly covered "all claims and controversies ('claims'), past, present, or future." *Anderson v. Waffle House, Inc.*, 920 F. Supp. 2d 685, 687 (E.D. La. 2013). The agreement at issue in *Anderson* also contained the following language:

> My agreement to accept arbitration can be revoked at any time within 7 days of my signing this Agreement, but such revocation must be submitted in writing and will result in my immediate termination, demotion and/or denial of consideration for employment … *If this agreement is not properly revoked by me within the 7-day*

> *time period described above, I understand that this Agreement will remain valid*
> *and enforceable unless modified by Waffle House ... or unless Waffle House and I*
> *execute a subsequent arbitration agreement … .*

*Id.* at 688 (emphasis added); *Southland Health Servs., Inc. v. Bank of Vernon*, 887 F. Supp. 2d 1158, 1164 (N.D. Ala. 2012) (arbitration agreement covered all disputes "based upon any prior, current, or future agreement, loan, account, service, activity, transaction (proposed or actual), event or occurrence"). The agreement examined by the district court in *Masse* was substantially similar to that in *Anderson*, also expressly stating that it would 'remain valid and enforceable unless modified by' [the] defendant." *Masse*, 2014 WL 1901112 at *3. That level of specificity regarding the parties' intent with respect to the continued validity and enforceability of the arbitration agreement is not present here.

I agree that when Lozano's first term of employment ended in 2012, the 2010 Arbitration Agreement survived with respect to any claims that may have arisen out of the 2010-2012 term of employment. However, without a showing that the arbitration agreement remains valid and enforceable following termination of employment, I would hold the 2010 Arbitration Agreement did not survive with respect to any claims arising out of future terms of employment. I would further hold UTS failed to demonstrate Lozano's claim fell within the scope of the 2010 Arbitration Agreement.

For these reasons I would affirm the trial court's order denying UTS's motion to compel arbitration.

Accordingly, I respectfully dissent.

Irene Rios, Justice