

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| VIBRA REHABILITATION HOSPITAL OF EL PASO, LLC D/B/A HIGHLANDS REHABILITATION HOSPITAL, SABRA TEXAS HOLDINGS, L.P., and DIANA SCHULTZ, | § § § § | No. 08-23-00137-CV  Appeal from the  120th Judicial District Court |
| Appellants, | § | of El Paso County, Texas |
| v. | § | (TC# 2022DCV2999) |
| RAMIRO ILLARRAMENDI, JR., | § | |
| Appellee. | § | |

## SUBSTITUTE CONCURRING AND DISSENTING OPINION

Unlike the majority, I would grant Appellee's motion for rehearing and en banc reconsideration. The concurring and dissenting opinion of May 17, 2024 is withdrawn and the following is substituted in its place.

I concur in part and dissent in part to the majority's opinion and judgment. I concur in the Court's affirmance of the trial court's denial of Sabra Texas Holdings, L.P.'s motion to compel arbitration. I dissent in the Court's reversal of the trial court's denial of Highlands Rehabilitation Hospital's (Highlands) and Diana Schultz's motions. I disagree the Injury Benefit Plan (the Plan)—which compels arbitration between Ramiro Illarramendi, Jr., Appellee, and Vibra Healthcare, LLC (Vibra), a non-party to this appeal—compels Illarramendi to arbitrate with both

Highlands, a non-signatory corporate affiliate of Vibra, and Schultz, its agent, without need for those parties to establish their adoption of the Plan by evidentiary proof. In my view, the majority's interpretation of the Plan is not supported by its plain language; and, as well, the interpretation departs from long established principles of corporate governance. Standing apart from the Court, I would affirm the trial court's denial of Highlands's and Schultz's motions compelling arbitration.

"Arbitration is a creature of contract between consenting parties" *Jody James Farms, JV v. Altman Group, Inc.*, 547 S.W.3d 624, 629 (Tex. 2018). "Whether parties have agreed to arbitrate is a gateway matter ordinarily committed to the trial court and controlled by state law governing 'the validity, revocability, and enforceability of contracts generally.'" *Id*. at 631. "The unmistakable clarity standard follows 'the principle that a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration' and protects unwilling parties from compelled arbitration of matters they reasonably expected a judge, not an arbitrator, would decide." *Id*.

In determining whether an arbitration agreement exists, courts apply ordinary principles regarding contract formation. *See J.M. Davidson v. Webster*, 128 S.W.3d 223, 227–28 (Tex. 2003). The primary concern in construing a contract is to ascertain the intention of the parties as expressed in the agreement. *Jody James Farms*, 547 S.W.3d at 633. Ordinarily, only signatories to an arbitration agreement may enforce its provisions. *See G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 524 (Tex. 2015). "Even when the party resisting arbitration is a signatory to an arbitration agreement, questions related to the existence of an arbitration agreement with a non-signatory are for the court, not the arbitrator." *Jody James Farms*, 547 S.W.3d at 632. Nevertheless, as required by principles of contract law and agency, "a person who has agreed to arbitrate disputes with one party may be required to arbitrate related disputes with

non-parties." *Id.* at 629.

Importantly, "compelled arbitration cannot precede a judicial determination that an agreement to arbitrate exists." *Id.* at 633. As relevant here, before the trial court could refer the parties to arbitration, it was initially charged with determining whether a valid agreement existed as between Illarramendi and each of three parties' seeking compelled arbitration, Vibra, Highlands, and Schultz. The trial court's resolution of a question of this nature is reviewed de novo. *See id.*

As to Highlands and Schultz, I disagree they established their rights to compel arbitration under Vibra's Injury Benefit Plan. It is clear and undisputed that Highlands and Schultz are both non-signatories of that agreement. Because they are principal and agent to each other, their claims are indistinguishable and they can be referenced together. Thus, from this point forward when I refer to Highlands it includes Schultz unless otherwise stated. There is no dispute that Highlands is an affiliate of Vibra. Ordinarily, "[a] corporate relationship is generally not enough to bind a nonsignatory to an arbitration agreement." *In re Merrill Lynch Tr. Co. FSB*, 235 S.W.3d 185, 191 (Tex. 2007) (orig. proceeding). "Unlike a corporation and its employees, corporate affiliates are generally created to separate the businesses, liabilities, and contracts of each." *Id.* "Thus, a contract with one corporation—including a contract to arbitrate disputes—is generally not a contract with any other corporate affiliates." *Id.* at 191, n.18 (citing, *e.g.*, *S. Union Co. v. City of Edinburg*, 129 S.W.3d 74, 86 (Tex. 2003) (holding franchise tax agreement inapplicable to corporate affiliate under single-business-enterprise theory); *Bell Oil & Gas Co. v. Allied Chem. Corp.*, 431 S.W.2d 336, 341 (Tex. 1968) (holding corporation not liable for affiliate's debts)).

Under Texas law, then, it is well established that non-signatories seeking to compel arbitration must "establish that they have a valid legal right to enforce the . . . arbitration agreement even though they are not parties to that contract." *G.T. Leach Builders*, 458 S.W.3d at 524. Courts

have generally noted six theories in which arbitration agreements may be enforced by non-signatories: (1) incorporation by reference, (2) assumption, (3) agency, (4) alter ego, (5) equitable estoppel, and (6) third-party beneficiary. *Jody James Farms*, 547 S.W.3d at 633. Here, though, Highlands does not rely on any of these theories to compel arbitration. Rather, it argues the plain language of the Plan lists it as one of Vibra's "participating sites"; and, based on this listing, it maintains it may compel arbitration without being a signatory of the contract, and without relying on any of the recognized, non-signatory theories.

Specifically, Highlands points to Article II of the Plan, the provision defining contract terms. There, the term "Company" is defined as: "Vibra Healthcare, LLC . . . or any affiliate or successor thereof that subsequently adopts the Plan." Rather than show plan adoption, however, Highlands simply points to "Addendum 1" of the Plan listing it as a "participating site." Highlands contends its inclusion on this list "confirms" it is an "affiliate[] of and under corporate control of Vibra . . . ." That is, it contends the list alone effectively serves as conclusive proof that Highlands adopted the Plan as an affiliate of Vibra. Seemingly rejecting this claim, the majority adopts a different rationale for supporting Highlands's right to compel arbitration.

The majority concludes, instead, that Highlands could compel arbitration simply by its affiliate status alone, without proof of Plan adoption, nor listing as a participating site. Specifically, the majority reads the Plan as *not* requiring an affiliate to adopt the Plan, though a successor need do so. I disagree with the majority's interpretation of the clause language. The clause at issue provides the following definition for "Company" when referred to by the parties' agreement:

> 2.6 Company. "Company" means Vibra Healthcare, LLC with its princip[al] place of business located at 4600 Lena Drive, Mechanicsburg, PA 17055 or any affiliate or successor thereof that subsequently adopts the Plan.

Interpreting this provision, the majority initially examines two canons of construction, the series-

qualifier canon and the last antecedent-canon. ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS, 144, 147 (2012) (describing both). After considering both, the majority ultimately concludes that only the last-antecedent canon applies while the series-qualifier canon would lead to a nonsensical result. I disagree. I would conclude, instead, that the series-qualifier applies, though I approach it differently.

Focusing on the text, the term "Company" includes a defined party, Vibra, and other parties who are further described by a descriptive but disjunctive phrase, "or any affiliate or successor thereof that subsequently adopts the Plan." The latter, additional phrase introduces at least two or more possibilities for "Company," beyond Vibra. That is, "Company" is defined as including Vibra *or* "any affiliate *or* successor thereof that subsequently adopts the Plan." (emphasis added). When examining the whole clause, the use of *or* acts to introduce equivalents for "Company" and "Vibra." The possible alternatives are described not by name but by entity type with further descriptive language. As the majority correctly describes, the clause presents a straightforward, parallel construction involving nouns in a series. To this extent, the majority recognizes the series-qualifier canon is applicable. *Id*. at 147 (providing the "Series-Qualifier Canon" instructs that "[w]hen there is a straightforward, parallel construction that involves all nouns or verbs in a series, a prepositive or postpositive modified normally applies to the entire series.").

I differ from the majority in determining which nouns to include in the series. I would include the nouns appearing after the first disjunctive "or." That is, the series-qualifier canon only applies to the phrase: "any affiliate or successor thereof that subsequently adopts the Plan." To this extent, the series includes the nouns "affiliate" and "successor," but not Vibra as that entity has already been fully described by name and address. As to alternative possibilities, "any" is an adjective operating as a determiner in the operative phrase. Because it appears before the nouns

5

"affiliate" or "successor" it refers to an indefinite or unknown quantity of entities that are not otherwise mentioned. *See* BRYAN A. GARNER, THE REDBOOK: A MANUAL ON LEGAL STYLE 200 (4th ed. 2018) (describing *any* as an indefinite pronoun). The next term, "thereof," an adverb, is defined by Black's Law Dictionary as meaning "[o]f that, it, or them[.]" *Thereof*, BLACK'S LAW DICTIONARY (12th ed. 2024). "Thereof" is used after a noun to relate it to a situation or thing that was just mentioned. Because it follows the term "successor," it shows that "successor" relates to "affiliate," as that is the noun just mentioned. As a result, "Company," includes "any affiliate" or "any successor of an affiliate," as alternatives for "Company." As a final element, "that" introduces the restrictive clause, "that subsequently adopts the Plan." *See* BRYAN A. GARNER, THE REDBOOK: A MANUAL ON LEGAL STYLE 211 (4th ed. 2018) (describing *that* as introducing a restrictive clause for relative pronouns referring to anything other than people).

Based on the totality of elements, I would conclude the series is composed of "any affiliate" or "any successor of an affiliate." Because the restrictive clause that follows is not set off by a comma, the clause cannot be left out of the sentence without changing its meaning. *Id.* Within that clause, "subsequently," an adverb, describes something in time following something else. Here, the something that follows is adoption of the Plan. The term "adopts," a verb, signals the acceptance of responsibility for the Plan. *Adopts*, Merriam-Webster's Collegiate Dictionary, Eleventh Edition, 17 (2003) (defining "adopts" as "to accept formally and put into effect"). As such, the restrictive clause, "that subsequently adopts the Plan," would modify each of the entities named in the series. Within the entire definition for "Company," the use of two disjunctives signals there could be two or three possibilities for "Company," but only when *any* is limited to a quantity of one each. With that assumption made, the definition of "Company" includes Vibra, or "any affiliate or successor thereof that subsequently adopts the Plan." Applying the series-qualifier

6

canon, then, the postpositive modifier, "that adopts the Plan," applies either to an affiliate or to a successor of an affiliate. *See* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS, 147 (2012).

Adding to its reasoning, the majority also distinguishes *Red Bluff, LLC v. Tarpley*, holding the Plan lacks an obligation for an affiliate to adopt its provisions. No. 08-14-00505-CV, 2018 WL 6722346, at *7 (Tex. App.—Houston [14th Dist.] Dec. 21, 2018, no pet.) (holding movant failed to meet its burden of establishing it was an "Employer" entitled to invoke the arbitration provision when it did not meet the two-step procedure for a subsidiary to adopt the Plan). Absent an express requirement or procedure for affiliate adoption, the majority holds that inclusion of the term "affiliate" establishes a contractual right to compel arbitration regardless of corporate independence between Vibra and Highlands. On this point, I also disagree.

Requiring an affiliate to adopt a plan aligns with long established principles of corporate governance. "A corporate relationship is generally not enough to bind a nonsignatory to an arbitration agreement." *In re Merrill Lynch*, 235 S.W.3d at 191; *see also In re Macy's Texas, Inc.*, 291 S.W.3d 418, 419 (Tex. 2009) (orig. proceeding) ("[E]ven if they were affiliates, treating affiliates as one entity for purposes of arbitration may be inconsistent with their separate creation."). Giving Highlands its due as an affiliate, I would hold that proof is needed for it to establish it exercised independent decision making by separately adopting the Plan terms. *See J.M. Davidson*, 128 S.W.3d at 227–28.

In sum, I would conclude that Highlands failed to establish it adopted the Injury Benefit Plan containing the arbitration right at issue. As a result, I would further conclude the trial court did not abuse its discretion in denying Highlands's motion to compel arbitration. Because Highlands could not enforce the arbitration agreement, I would also conclude its agent, Schultz,

also failed to meet her burden to establish she could enforce the arbitration agreement. I would thus affirm the trial court's order in its entirety. Because the majority concludes otherwise, I concur in part and dissent in part.

GINA M. PALAFOX, Justice

December 13, 2024

Before Alley, C.J, Palafox and Soto, JJ.
Palafox, J., concurring and dissenting in part